Price, J.
There is no merit in the cross-petition in error filed in this proceeding by Amos, the defendant in error. It seems that he was not satisfied with the findings of fact made by the lower court, but he did not file a motion for new trial as a foundation for a review of such findings.
Nor was the defendant in error entitled to any relief in damages against The Buckeye Pipe Line Company on account of any facts appearing in the record, and it was not liable to account to him for any oil which was the subject of controversy between the lessor and lessee. The Pipe Line Company took the oil as a common carrier, or bailee, for both parties, and when they could not agree on a division of it, and therefore not upon a division order upon the company, it was unable to decide between them on the only question of difference, and the lessor resorted to the proper court for its solution. This view will become quite clear from our further consideration of the case.
The lease of October 11, 1902, granted to the plaintiffs in error and their heirs and assigns, “all the oil and gas in and under said tract of land, and also said tract of land for the purpose and with the exclusive right of operating thereon for said gas or oil, with the right of way, the right to lay pipes *168 over and to nse water from said premises; and also the right to remove at any time, all property placed thereon by the lessee. ’ ’ The grant is for a term of twenty years from date and as much longer as oil or gas is found in paying quantities thereon, yielding and paying to the lessor “the one-sixth of the oil produced and saved from the premises, delivered free of expense into the tanks or pipe line to the lessor’s credit.”
There is another important clause in the lease:— “it is agreed further, that the second party (lessees) shall have the right at any time to surrender the lease to the first party for cancellation, after which all payments and liabilities to accrue under and by virtue of its terms shall cease and determine and the lease shall become absolutely null and void.”
The lessees proceeded to operate under this lease and drilled and equipped one oil well, which the circuit court found “did not produce oil sufficient to pay for operating the same at one-sixth royalty as prescribed in the lease. ’ ’ That court further found that the defendants, now plaintiffs in error, informed the plaintiff, Amos, that they would abandon said premises and surrender said lease, unless he would agree to reduce the royalty stipulated therein from one-sixth to one-eighth, and they proposed that if he would make that reduction, they would proceed to further drill and operate the lease for oil. Thereupon the lessor and lessees entered into a parol contract, to the effect that if the lessees would continue to further drill and operate said lands for oil, the royalty should be one-eighth instead of one-sixth as provided in the lease, and further, that if at the end of thirty days from the completion of any well, the average production of said lands should amount to *169 five barrels per day for each well, the royalty to the lessor should be one-sixth; and if the production at the end of thirty days from the completion of any well should amount to an average of ten barrels per day from each well, the royalty to the lessor should be one-fourth of the oil produced.
In consideration of this parol contract, the lessees drilled, equipped and operated five additional wells on said lands at an expense to themselves of not less than six thousand dollars. But at no time since the completion of either or any of said wells has the production exceeded an average of two barrels per day for each well. When it came to sign a division order according to the terms of the parol contract, Amos, the lessor, refused, and demanded one-sixth royalty as stipulated in the written lease, and brought action to enforce specific performance of its terms. While the circuit court found all the above facts to be established, it held that the verbal agreement so made is within the statute of frauds and therefore void. Is its conclusion of law sound?
That statute is found in section 4199, Revised Statutes, and its provisions relative to the present controversy may be quoted as follows: “No action shall be- brought whereby to charge the defendant * * * upon any contract or sale of lands, tenements or hereditaments, or any interest in, or concerning of them; nor upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.”
*170 It is claimed for the lessor who commenced the action under review, that, (1) the parol contract relied on relates to an interest in or concerning land; and, (2) that the contract was not to be performed within the space of one year from the making thereof. We cannot assent to either proposition. The title to the land is not involved, nor is any interest or estate therein. The question arises on a lease supplemented by a parol contract with reference to the consideration. There is no controversy over the extent of the grant, and the parol contract does not undertake to lessen or enlarge the estate granted. Touching the division of the oil when brought to the surface, the written lease stipulates that the lessees shall yield and pay “to the lessor the one-sixth part of the oil produced and saved from the premises, delivered free of expense into the tanks or pipe line to the lessor’s credit # *
This share is the lessor’s compensation for the lease and the rights granted therein. The five-sixths go to the lessees by virtue of the same instrument, because the grant to them was the oil contained in the premises. Therefore the parol contract related to personal property and not real estate, or an interest in or concerning the same. In Kelley v. The Ohio Oil Co., 57 Ohio St., 317, this court held that petroleum oil is a mineral, and while it is in the earth, it forms part of the realty; and when it reaches a well and is produced on the surface, it becomes personal property and belongs to the owner of the well. In the opinion by Burket, J., on page 328, it is said: “Petroleum oil is a mineral, and while in the earth it is part of the realty, and should it move from place to place by percolation or otherwise, it forms part of the tract of land in which it tarries for *171 the time being, and if it moves to the next adjoining tract, it becomes a part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty, and becomes personal property, the personal property of the person into whose well it came. # * * It is the property of, and belongs to the person who reaches it by means of a well and severs it from the realty and converts it into personalty. ’ ’ The same doctrine is again laid down in Natural Gas Co. v. Ullery, 68 Ohio St., 259.
The lessees, by the written instrument, agreed to drill and operate for oil, and of what they would thus produce from the wells and thereby severed from the realty, they were to yield and pay to the lessor one-sixth. Hence, when the parties entered into the parol contract as found by the lower court, they were not contracting for an interest in or concerning real estate, but for a division of personal property in proportions different from those named in the written lease. The royalty is an incident to the written instrument as a means of compensation to the lessor for the grant and privileges therein conveyed.
Akin to the foregoing is the case of Long v. White, 42 Ohio St., 59. It is there held, that the statute of frauds cannot defeat the recovery of the purchase money on a verbal contract for the sale of a dwelling house then annexed to real estate, but to be severed from the freehold and delivered on rollers, after the same has been so severed, and which was delivered in accordance with the contract. In that case the defense was that the dwelling house, when the verbal contract for its purchase was made, was standing upon the premises, erected upon permanent walls, *172 a solid and strong foundation, permanently affixed to the premises and constituted a part of the same. The defense was held had and the seller recovered.
In Negley v. Jeffers et al., 28 Ohio St., 90-91, it is held that when a deed to real estate has been executed, or title in any other way passed, subsequent agreements between vendor and vendee, as to the pecuniary liabilities growing out of the transaction, which do not take away or confer any interest in the land, but only determine the time when the purchase money becomes due, are not affected by the statute of frauds. It is further held, that a subsequent contract between the parties, by the terms of which, the vendee, for a valuable consideration received, agreed to waive his right to insist on the performance of conditions precedent which were in writing, and take the property subject to incumbrances, and pay the balance due, is not a contract within the statute of frauds, and may be proved by parol. See also Blakeney v. Goode et al., 30 Ohio St., 350.
In Shaw v. Walbridge, 33 Ohio St., 1, this court decided that where a grantor in a deed absolute on its face, claimed that it was a mortgage, in a proceeding” to establish that claim, it was competent for the grantee to show, that although originally a mortgage, the equity of redemption had been released by a parol agreement. Beyond doubt the party released an interest in real estate. We think these authorities ample on the first proposition.
The second contention is that the parol contract was not to be performed within one year and for that reason it is within the statute of frauds. We think this position is also untenable. The only time fixed for performance is when oil is “produced and saved,” and on its face is susceptible of being per *173 formed within a year, within the legal signification of that term. One well had been drilled and was in operation when the verbal agreement was made. The premises consisted of sixty acres, and the remaining wells, five in number, could be, and perhaps were drilled and put in operation'-within the year, and they may all become worthless and nonproductive within the year after each had been operated. The rule is well stated by Browne in his work on the Statute of Frauds, sections 274-5-6. In section 274 it is said: ‘ ‘ Suppose that the parties make no stipulation as to time; but the performance of the agreement depends either expressly or by reasonable implication upon the happening of a certain contingency which may occur within the year. In such case it is settled upon authority and is reasonable in principle, that the statute should not apply. The agreement may be performed entirely within the year, consistently with the understanding and the rights of parties.”
The author in the following section cites illustrations of his meaning. And in section 576 he adds: “cases where the promise is to continue to do something until an implied contingency occur; as for instance, to pay during the promisee’s life; to pay during the life of another; to work for another during his life; to board the promisee during his life; to educate a child; to support a child; to pay during coverture, — are not within the statute, because the contracting parties contemplate that the one whose life is involved may die within the year. Agreements to continue to do something for an indefinite period, which may be terminated at any time by either party; or which may be terminated by such change in the circumstances of the parties *174 as will - make it unreasonable or unnecessary that they be further bound, the contingency' of such change of circumstances being implied in the nature' of the contract, — are not within the statute.” It is well to remember here that one of the stipulations in the lease is, that the lessees might abandon and surrender the lease at any time and remove their property, terminating all further liabilities. But we will not further pursue the discussion in the text books. This court spoken sufficiently plain on the subject in several cases. In Randall v. Turner, 17 Ohio St., 262, it is held that a verbal agreement for the sale of lands which has been fully performed on the part of the vendor, is not rendered void by the statute of frauds. In the opinion by Day, C. J., on page 270, it is said: “the most that can be claimed is, that it (the contract) was not likely to be performed in a year; but it was clearly susceptible of performance within that time. The road (railroad) might have been abandoned within a year, and thus a reasonable time to wait for its completion would have expired. There was surely nothing in the contract that fixed the time of performance beyond a year. It is well settled by the authorities upon this point, that the contract is not within the statute of frauds. Moreover the suit being for the purchase money of the land, and the contract having been fully performed on the part of the vendor, the statute does not apply. ’ ’
Jones v. Pouch, 41 Ohio St., 146, is a case where there was a verbal contract to construct a section of a road within a year and twenty days from the date of the contract. ■ The work could have been completed within the year, and it was held, that this was *175 not an “agreement not to be performed within the space of one year from the making thereof;” and an action thereon was not prohibited by the statute of frauds.
A very decisive case is found in Towsley v. Moore, 30 Ohio St., 184. Miss Towsley was a minor about eleven years old, and with the advice and consent of her mother, agreed to work for Moore in his household and kitchen, until she arrived at the age of eighteen, for which service Moore was to board, clothe and furnish her with schooling, and at the expiration of her term of service, pay her what such service was reasonably worth. She rendered the service agreed upon. In her action to recover, among other defensive ma/tter, Moore set up the statute of frauds — that the contract could not be and was not performed within a year from its date. This was admitted by the reply, but it averred, that she did fully complete and perform the same, and that her services were worth the amount sued for.
It was held on the above facts, that “although an action cannot be maintained upon a verbal contract not to be performed within one year, yet when such contract has been fully performed by one party, the other having obtained its benefits, he cannot refuse to pay the reasonable value thereof. ’ ’ That is a very instructive case on the one-year clause of the statute of frauds, and the principles of various decided cases are well summed up in the opinion on page 194.
In the light of the authorities, only a few of which we have noted — how stands the ease at bar? Relying on the integrity of the verbal agreement with their lessor, the plaintiffs in error drilled, equipped and put in operation five additional wells at an expense of not less than six thousand dollars, and tendered *176 111111 the eighth royalty agreed upon' as the inducement to make the large expenditure. They have fully performed the contract on their part, of which performance, lessor has received the benefits, and can he now repudiate the contract as invalid and defeat the rights of the lessees ?
He has brought his action in a court of equity for specific performance of the terms of the original written lease, and the lessees plead the change in the royalty merely. Courts of equity do not always grant specific performance of contracts, and they will not do so where it would work manifest injustice to adverse parties. On the facts found in this case, there is not a semblance of equity in the lessor’s •claim, and the circuit court should have denied his prayer for relief.
The judgment of the circuit court is reversed, and rendering the proper judgment on the facts found, we find for the plaintiffs in error, and dismiss the petition filed-in the court of common pleas by defendant in error.

Judgment reversed.

Davis, C. J., Shauck, Crew and Spear, JJ., concur.